Case 12-6269 David Eggleston v. Jake Short Argument not to exceed 15 minutes per side. Ms. Casillas for the appellate. Good morning. Good morning. May it please the court, opposing counsel, my name is Rachel Morris Casillas and I represent the appellate in this case, Officer Jake Short. I would like to reserve four minutes for my moment. As the court is aware, this appeal is from the denial of qualified immunity assertion and motion for summary judgment from the district court in Tennessee. We're here today because Officer Short stopped that bully, Mr. Eggleston, after he witnessed her crime. Most attorneys get up and say, I have three things I want to talk about. This is not the situation in this case. To be honest, Your Honor, the video is what I hope the court has reviewed because I will be coming back to the video numerous times. The court is well aware of the legal framework for qualified immunity. I'm not going to repeat it for the court's discipline, but what I want to focus on is the grand factors. On May 14, 2010, Officer Short was driving down southbound lanes in Mount Julia Road just doing a normal cruise on his patrol. He sees a vehicle fly by him, speeding, passing in the right-hand lane. Before he even has an opportunity to turn on his lights, this vehicle, this truck, hits another car, the Roberts, Mr. and Mrs. Roberts and their two children. Mr. Eggleston hit another vehicle. Mr. Eggleston didn't stop at that point, like most people who hit a car would do. Mr. Eggleston drove across the intersection and continued down Mount Julia Road, swerving twice over the center line into oncoming traffic. Officer Short, believing, obviously, that he just witnessed a crime, initiated his sirens and lights and proceeded to try to pull over Mr. Eggleston. Mr. Eggleston didn't initially stop. At some point, Mr. Eggleston did stop once he hit the intersection where there was no vehicles in front of him, and he couldn't pursue any farther. At this point, Officer Short exits his vehicle and is clear on the video. No one disputes the video. Either the appellate or the appellate dispute the validity of the video. We may argue about what the facts could be interpreted in regards to the grand factors or in regards to reasonableness or in regards to clearly established law, but no one disputes the actual facts of the video. The facts are what they are, and the situation is unlike many others where we actually see... Well, the trial judge didn't feel the facts are what they are. He found the video to be ambiguous. Your Honor, the trial judge did say... Or he found it subject to more than one interpretation. He did say giving the varying interpretations of the video. However, Your Honor, the district court judge did only issue a three-line order wherein the first sentence was factually incorrect. The first sentence of the order states that the plaintiff, Mr. Eggleston and the appellate here, filed the video, which is incorrect. The defendant filed the video for the court to review. And the second sentence simply says giving the varying interpretations. Now, there is no dispute as to the facts. There may be disputes as to a question of law applying those facts, but... Well, wait a minute. Wasn't there a dispute as to how much force was applied at the scene of the arrest and the extent to which that force was excessive and whether the injuries inflicted were necessary or appropriate? I mean, you and your opposing counsel don't agree on what occurred in terms of the amount of force that was applied and excessive for that. Wouldn't you have to concede those factual issues for your client to avail himself of disputes for us to have jurisdiction on this immunity appeal? And it sort of seems there are some disputes. Your Honor, it is the appellant's position that there is no disputes. And the plaintiff, if he wants to assert his version, which is the version on the videotape, which is... The videotape is very clear. I beg the court to review it. We all review it. As I see it, unless you've got an issue with everybody putting him on the hood, is there an issue there? To my knowledge, the plaintiff is asserting when, excuse me, the appellee is asserting when he was removed from the vehicle. He's removed from the vehicle. He's taken down to the ground. Yes, Your Honor. I don't think anybody, well, that's a broad statement. I myself have no problem with taking him to the ground. But did he throw him down too far? Well, Your Honor... Because he suffered a busted jaw, didn't he? Your Honor, there were some facial injuries. There is a disputed... There is one disputed back. But the issue is not the extent of the injuries. It's the nature of the force, and that's... Well, that's true, but he could have eased him down. Your Honor, with all due respect, Mr. Officer Short executed a textbook RMR based removal from a vehicle that was still a dangerous threat to society to the bystanders and the officer. Officer Short witnessed Mr. Edelson hit a family and then drive into alcohol and traffic. The grand factors were very specific about considering the severity of the crime. He just hit a family and didn't stop. And the second factor is whether or not that crime, whether or not there posed an immediate threat to the officer and to the bystander. Officer Edelson, Your Honor, truly believed in his deposition and clearly on the video that Mr. Short, excuse me, Officer Short, that Mr. Edelson was clearly still a threat to the bystanders, the other vehicles he crossed the center line two or three times. I myself, I can't speak for anybody else, but I must say, no problem with stopping, no problem with busting the window, no problem with pulling him out, but they had thrown him to the ground too hard. Perhaps one should focus on that. Well, Your Honor, in regards to throwing him down to the ground too hard, Officer Short removed him in a classic RMR technique. It's very clear on the record that Mr. Edelson had 0.28 blood alcohol level, so Mr. Edelson probably couldn't stand up even if he just gently moved out of the vehicle at that point. But the question is whether excessive force and connection with the takedown that Mr. Edelson's hit hit the pavement in the way it did, which appears in the video to be pretty hard, and that also when the officer was picking him up, his head hit again with fear. So it seems to me that that's what we're really looking at, whether there are these issues of fact with respect to the alleged use of excessive force in connection with the takedown and maybe with picking him up as well. His head did appear to hit the pavement. The video is very clear as to all the facts. In this situation, Officer Short exercised the basic takedown maneuver. Now, did his head hit the pavement? Absolutely. Is that because he was so drunk he couldn't have stood up if he wanted to? Maybe. We don't know. But the analysis of whether there is excessive force and whether Officer Short's entitled to qualified immunity is from the perspective of the officer at that time. He did what he was trained to do. He removed Mr. Edelson from the vehicle, and his tactical maneuver that was taught to him through basic training, through his academy to put the suspect and to remove him from the threat, the truck, it is clearly still on and driving. When you say, when you look at the perspective of the officers, the subjective perspective, we're looking at objective. His legal objective's perspective. But we can't sit here two years later, Your Honor, and pick out each detail. We have to put ourselves in the shoes of Officer Short. And we have, luckily in this case, we have video of what he saw. He saw a man speeding, hit a car, hit a vehicle. I don't think we want to get anyone else disputing what occurred prior to the takedown. And this was a, I think, Mr. Edelson admits a moderate to severe violation of the law. And he removed him as he was taught. Now, whether Mr. Edelson's face at the pavement and he sustained injuries at that point, there is some disputed facts in regards to where he has sustained his injuries. There's deposition testimony and discovery proof that he actually sustained his injuries when he hit the steering wheel and hit the car. But, again, the analysis doesn't follow. Let me ask you again, is that, the video, they go out of the video, and again, he was bent over the car, over the cruiser, over the cruiser of the handcuff. Is there a dispute that he banged his face on the cruiser and all that? Not to my knowledge, Your Honor, and I think that would be an appropriate question for the appellee. At this point, Officer Short exercised the appropriate amount of force given the threat he saw. He removed Mr. Edelson from the vehicle and placed him on the ground. Did Mr. Edelson's head hit the pavement? Yes, it's clear on the video. Was that because he had a .28 blood alcohol level? Possibly. Was it because Officer Short was scared for his life and the lives of the others and moved him and put him on the ground? Maybe. But the force that was used in the removal is clearly, he's clearly entitled to qualify for removal. How do we know that this is a quote-unquote textbook take down? Your Honor, Officer Short testifies in his deposition what he was trained to do at the academy and what he exercised in that, in that maneuver. It's clear he unlocked the door, it's clear he removed him with a RMR remover and then put him on the ground. He only put him on the ground to handcuff him and secure him in order to be able to reach back in the vehicle, put it in the park so that it would not ram any other cars, and then move Mr. Edelson to his cruiser, which is how he went back and pulled the vehicle off. If you look at the amount of force that was used, Officer Short, it's clear on the video, had drew his weapon because he was afraid for both his life and the life of the people and other people. He holstered his weapon. Once he knew that amount of force was not appropriate, once he was unable to get into the car, he broke the window and immediately threw his ass in the back of the truck because he didn't think that force was appropriate. Unlocked the door and removed Mr. Edelson at that point to secure the vehicle, which was the immediate threat. Now, Your Honor, the order to the district court is three sentences. It basically says, given the varying interpretations of the video, in his defense position, there is no varying interpretation. The facts are what they are. We are lucky that we have a video of what happened. But taking those facts and applying them to the analysis of qualified immunity, Officer Short is entitled to qualified immunity. We have to look at a reasonable objectiveness from his perspective on that night. Thank you, Ms. Saez. Your initial time has expired, but you will have your vote. Thank you. I'm pleased to report I'm Judge Grace Johnston of the Tennessee Bar. I represent the plaintiff, David Eggleston. From the court's questions and comments, I don't want to be redundant here. We respectfully submit that the district court's order, although very, very short, was correct as a matter of law with respect to qualified immunity. Where there are disputed issues of fact dealing with the amount of force used, that makes it inappropriate for some judgment and makes it a different question. There are three factors that are generally considered for excessive force cases. The severity of the crime, which has been discussed, the threat to the safety of the officer or others, which has been discussed, and resisting or attempting to flee. The video we respectfully submit does not blatantly or demonstrably contradict what the district court found with respect to disputed issues of fact. The severity of the crime, we concede that head and run and DUI are certainly serious offenses, but they are not the offenses that are directly related to the use of force here. At the time the use of force was exercised, the vehicle was stopped. The plaintiff testified that he either turned the vehicle off or it was in park. The use of the ask to break the extract Mr. Eggleston from the vehicle as quickly as possible for not contending that the use of the ask was excessive. However, once he grabbed Mr. Eggleston by the arm and neck and pulled him from the vehicle and basically slammed him down on concrete asphalt in his handcuffed, Officer Short attempted to take him off the ground and dropped him in on his face on the ground. We respectfully submit that that was excessive. And finally... Okay, so... Yes, sir. So, the King County Divider stated that no problem at the time reaches in to take him out of the cruiser, right? Yes, Your Honor. Yes, Your Honor.  So now, he pulls him out. Yes, Your Honor. He does this classic hip toss, which I've run into in other cases where he does this classic hip toss. How were the injuries occurred? Yes, Your Honor. Or were they set to ground? We respectfully submit that it may have occurred in any one of the three times that his face was hit. First was when he was immediately removed from the vehicle. That appears to be the most forceful hip toss. The second was when he was dropped during the course of being lifted off by his handcuffs. And the third was when he was taken to a patrol car and slammed down on the hood, face down on the hood. So you disagree with the counsel? She said that's not an issue? Yes, Your Honor. We believe that the testimony of the plaintiff, Applee, in his deposition talks about being slammed down face down on the patrol car. That's not in the video? Yes, Your Honor, it is. Well? If you look very closely, Your Honor, his head is not completely shown, okay, when he was slammed down. But if you look closely, Your Honor, you can see that it's slammed down. In any event, Your Honor, we respectfully submit that any one of those three blows could have done the damage that he sustained in this case. Is it your position that Officer Short should not have used the hip toss to take him down at all? No, Your Honor, we do not dispute the use of what's called a controlled takedown. A controlled takedown is supposed to protect the officer as well as the suspect and to take him to the ground without injury. In this case, if you examine the video very closely, Officer Short has Mr. Eccleston by the neck and slams him down. And we respectfully submit that that was unnecessary and excessive. Is part of the problem here, I don't know how clear it would be in terms of Mr. Eccleston's response, but this gentleman was something like 0.28 alcohol level, so pretty intoxicated and presumably not able to help break his fall. Does that make a difference? Your Honor, Mr. Eccleston was obviously impaired, extremely impaired, and there is, in tort, there is a duty with respect to officers when they are dealing with suspects who are impaired that there is a high duty of care. We respectfully submit that this duty obviously, this is not a controlled takedown, it is to take into consideration those factors so that when you put the person down on the ground for purposes of handcuffing, you do not unnecessarily injure that person. Does it make a difference, as I recall here, Officer Short said as he approached the driver's door that he thought he saw the driver reaching down toward the floorboard and arguably that counseled the officer to act very quickly and try to separate the driver from the cabin and get him out quickly and get him down. Your Honor, I think we can appreciate that factor in the use of the ask to break the window to get the door open quickly, but the officer also testified that when he grabbed the plate, I believe, most of his hands were on the steering wheel, and so he didn't have any weapon at that point. So again, we're not trying to second guess what the officer was thinking, but objectively we respectfully submit that. Did he turn the motor off before or after taking that picture? That is in dispute, Your Honor. The plaintiff testified that he turned the engine off and is arguing that the car was a danger to somebody because it was not in park, it was still on, and it could have rolled into oncoming traffic. If you look at the video, the truck is not moving. The truck is not moving. Does that mean it's in park? It's either in park or it's off. Now, the taillights are on, but the taillights could be off because the headlights are on in the evening. So you really can't say. There's a disputed fact, but we respectfully submit that it's in park. The final... Well, I don't know if he had to get him down on the control and get him back in and turn the truck off. That would be some idea that he might have been... Well... Had to do this fast. Your Honor, I could appreciate that, but I respectfully submit that the truck was not on, and it's a disputed fact. Do you contend that excessive force was used by the officer in picking Mr. Eggleston up after he was secured? Yes. Just to take that? No, Your Honor. There are all three instances where we have shown through the video that Mr. Eggleston's face did not hit the ground with the police car. There are some cases in this circuit that are not fully reported that do indicate that somebody in this situation that allows a suspect to hit the ground when they're being lifted up is excessive. This is not a case where the law is not fairly established. The law is fairly established, but the final factor that is to be considered in the grand test for excessive force is whether there was resistance or an attempt to flee, and I respectfully submit that there was no resistance that was shown on the video. There was no attempt to flee that was shown on the video. The plaintiff has testified that he did not resist. The only testimony about resistance is from Officer Short. His comment was, well, he was resisting because he was not obeying my commands, and he did not get out of the truck. He was moving around inside the truck. Well, if somebody smashes a window next to your head, that's pretty much an assault. I'm sure that would cause somebody to move around a little bit. In any event, Your Honor, we respectfully submit that this is not the kind of resistance that would testify to use of force. I'm just asking about – Ms. Casillas said that there's testimony in the record that this was a textbook controlled takedown. Is it your argument that there's some other textbook aspect of the takedown the suspect has compared? Your Honor, there's no expert testimony in the record that I'm aware of that deals with the expertise required for a takedown. A controlled takedown clearly has to have the suspect under physical control, so he cannot resist, so he has to go down. Now, how he's taken to the ground, you know, if you have control, then you shouldn't be able to just throw him to the ground and further injure him. We respectfully submit that, in this case, Officer Short practically used the blade of his pile driver and just pushed his face into the gas line. There's testimony in the deposition of the claim where he said – and this is hearsay, but he said the dentist initially thought that he might have been in a bicycle accident because he was pulling asphalt out of his teeth. So, Your Honor, that again suggests that the injury was caused by the initial impact of the second blow. Now, opposing counsel is correct that the severity of the injury is not necessarily a factor with respect to whether there was excessive force, but we respectfully submit that, in this case, it does reflect where the injury occurred and when the injury occurred. Thank you, Your Honor. A few brief points in the middle. The video is clear, and in Scott v. Harris, Supreme Court stated, The videotape quite clearly contradicts the version of the story told by the respondent and adopted by the Court of Appeals. On the video, it clearly shows Officer Short putting the driver on the ground and then The truck is clearly still on in the video. Then it clearly shows Officer Short later going back and turning the truck off. That's clear on the video. The respondent's version, Well, I thought I had it in park, or I thought I turned it off, is clearly contradicted by the video. Officer Short needed to remove Mr. Eggleston from his vehicle. He needed to do it for the safety of himself and for the safety of those around him. Mr. Eggleston had already hit a family of four. Mr. Eggleston was placed on the ground. Did he hit his face on the pavement? It appears so from the video, yes. But Officer Short didn't use any more force than was necessary to remove him from the vehicle and put him on the ground to secure him and then to be able to secure the vehicle at that point. Officer Short had just witnessed a vehicle getting hit. He used the appropriate steps of force and reduced that force accordingly based upon the video. He initially drew his weapon. At that point, he realized, Okay, I don't need my weapon. I can holster my sidearm. He was not able to remove Mr. Short from the vehicle pursuant to his verbal commands. At that point, he tried to open the door. It wasn't open. At that point, he deployed his ass, another form of force. Broke the video. Knew he did not need his ass at that point. Threw the ass in the back of the truck. Reached in, unlocked the door, and removed Mr. Eggleston from the vehicle. Please ask the court to review the video. Excuse me. Remove him from the truck. To review the video and ask yourself, At what point is Officer Short supposed to stand there and say, Mr. Eggleston, will you please get out of the car now? No. He needed to remove him from this vehicle that he had used to hit his family. And that was what was paramount in Officer Short's mind at that time, to secure this vehicle and to secure Mr. Eggleston. He placed him on the ground, and he handcuffed him. He didn't throw him around. He didn't kick him. He didn't punch him. He didn't use anything. He took him out of the vehicle and placed him right next to the truck so that he could secure that truck so that it did not go into off-road traffic. Your Honor, I beg the court to look at the video and to look at the perspective of Officer Short on that night. He is entitled to qualified immunity. Our position is that the facts that are genuine and material are not in dispute. The video is very clear. And the district court issued a three-line order simply saying, giving the very interpretation, I'm going to deny qualified immunity. We don't even know what facts the court said, wouldn't have thought would be in dispute at that point. Based upon the video and based upon Officer Short's testimony as to what he was taught is clear in the record. He testifies in the record what he was taught at the Tennessee Law Enforcement Academy and what he did that day to remove Mr. Eggleston from the vehicle and put him on the ground, that he exercised the appropriate amount of force. Again, the nature of the injuries is not the focus. It's the extent of the force used. And in this situation... Well, there is a second circuit case that says it should consider the extent of the injury. Your Honor, there is a... No, because I was reversed. Yes, Your Honor. And in this situation, however, generally the focus is on the amount of force used. Think of yourself. What was Officer Short to do at that point? Politely request Mr. Eggleston to exit his vehicle, which he'd been doing since he'd exited his cruiser at gunpoint, and Mr. Eggleston didn't respond. He needed to remove him. He did so in a fashion that was appropriate. What about the... What happened at that point? Was there a hood? Counsel says there is an issue with that. Your Honor, on the video you can see Mr. Eggleston, part of his head placed on the hood. Our position is there clearly is no excessive force there, and it's clear from the video. I see my time has run out. Okay, thank you, Counsel. Both of you for your arguments today. I appreciate that. The case will be submitted, and we will call the hearing.